No. 21-13319

# United States Court of Appeals

*for the*

# Eleventh Circuit

———————◆———————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

– v. –

STEVEN MICHAEL MARKS,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
(HONORABLE PAUL G. BYRON, U.S. DISTRICT JUDGE)
NO. 17-cr-00257-PGB

## BRIEF FOR DEFENDANT-APPELLANT

MARK J. MAHONEY
HARRINGTON & MAHONEY
70 Niagara Street, 3rd Floor
Buffalo, New York 14202
(716) 853-3700

– and –

TODD FOSTER
NATALIA B. SILVER
BARNETT KIRKWOOD KOCHE
   LONG & FOSTER P.A.
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
(813) 253-2020

*Attorneys for Defendant-Appellant*

No. 21-13319-A

United States of America v. Steven Michael Marks

# Certificate of Interested Persons and Corporate Disclosure Statement

The following persons have an interest in the outcome of this appeal:

1.    Byron, Hon. Paul G., United States District Judge

2.    Foster, Todd A., Esq.

3.    Goddeyne, Matthieu S,, Esq.

4.    Mahoney, Mark J., Esq.

5.    Marks, Dana, mother of defendant-appellant

6.    Marks, David, father of defendant-appellant:

7.    Marks, Steven Michael, defendant-appellant

8.    Minor victims whose identities are protected

9.    Negrón-Muñoz. Rosa, MD.

10.    Silver, Natalia B., Esq.

In addition to the above, the following individuals may also an interest in the pending case:

11.  Chang, Emily C. L., Assistant United States Attorney;

12.  Dale, Hon. Candy W., United States Magistrate Judge;

13.  Dickstein, Jonah K., Esq.;

14.  Handberg, Roger B., United States Attorney;

15.  Hoppmann, Karin, Acting United States Attorney;

16.  Lopez, Maria Chapa, former United States Attorney;

17.  McNamara, Linda  Julin, Assistant United States Attorney, Deputy Chief, Appellate Division;

18.  Muldrow, W. Stephen, former Acting United States Attorney;

19.  Price, Hon. Leslie R. Hoffman, United States Magistrate Judge;

20.  Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division;

21.  Spaulding, Hon. Karla R., United States Magistrate Judge (retired);

22.  Thresher Taylor, Michelle, Assistant United States Attorney.

No publicly traded company or corporation has an interest in the outcome of this appeal.

# Statement Regarding Oral Argument

Counsel for the appellant respectfully inform this Court that they believe that oral argument should be heard in this case because it presents an important legal issue of considerable significance to the administration of the Criminal Justice Act and the Equal Protection rights codified therein.

## Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement. . . . C-1 of 3

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

    Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

    Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

    Other Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [7](7)

    A.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [7](7)

    B.    Motion for CJA Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [12](12)

        1.    *Denial of Request for CJA Funds* . . . . . . . . . . . . . . . . . . . . . [13](13)

    C.    Motion for Reconsideration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [14](14)

    D.    Second Motion for Reconsideration   . . . . . . . . . . . . . . . . . . . . . . [15](15)

        1.    *Denial of Motion for Reconsideration* . . . . . . . . . . . . . . . . . [16](16)

    E.    Motion for Permission to File Third Motion for Reconsideration . . [17](17)

    F.    Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [18](18)

Summary of Argument   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [20](20)

Point I The judicial duty under §3006A, to "authorize counsel to obtain the services" of experts, is not authority to control whose services counsel obtains . . . . [26](26)

    A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [26](26)

B.    §3006A(e)(1) does not expressly or impliedly suggest any authority to control what expert the defense obtains with CJA funds. . . . . . . . . [26](#26)

Point II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [29](#29)

Even if a judge has some authority to control what experts an indigents' counsel obtains, it was error to do so here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [29](#29)

A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [29](#29)

B.    An "appropriate inquiry" was never conducted under the Criminal Justice Act as required by § 3006(A)(e)(1) . . . . . . . . . . . . . . . . . . . . [30](#30)

C.    It was error to refuse to reconsider a determination under §3006A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [33](#33)

D.    A forensic psychologist or psychiatrist is generally necessary for a defense expert on competency. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [35](#35)

E.    Dr. Negrón-Muñoz was especially well qualified for evaluating Mr. Marks' competency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [36](#36)

F.    Poor reasons advanced to justify the decision. . . . . . . . . . . . . . . . . [38](#38)

iv

  *1.*  *It was not necessary for the defense to show that Dr. Geller's testimony was "flawed"* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

  *2.*  *It was not necessary for the defense to prove that it was more economical to hire Dr. Geller* . . . . . . . . . . . . . . . . . . . . . . . 40

 G. Limiting the defense to obtaining the services of an expert who the district court had already found incredible was unjustifiable and prejudicial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Point III The appeal is from a final order on a collateral issue which is appealable now . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

 A. The decision refusing fees for Dr. Negrón-Muñoz is final . . . . . . . . 45

 B. The decision resolved an issue completely separate from the merits of the action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

 C. The issue is a constitutional one which must be appealable . . . . . . 47

 D. If not appealable now, the order might not be appealable at all . . . . 49

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

v

# Table of Authorities

**Cases**

*Alamia v. Jones*, 2016 U.S. Dist. LEXIS 129216 (N.D. Fla. Feb. 3, 2016) . . . . . 31

*Anderson v. City of Bessemer*, 470 U.S. 564 (1985) . . . . . . . . . . . . . . . . . . . . . . . 23

*Cohen v Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949) . . . . . . . . . . . . 45

*Morgan v. United States*, 298 U.S. 468 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*State v. Dahl*, 874 N.W.2d 348 (Iowa 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Bauer*, 956 F.2d 693 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Bloomer*, 150 F.3d 146 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . 47

*United States v. Castaneda*, 997 F.3d 1318 (11th Cir. 2021) . . . . . . . . . . . . . . . 29

*United States v. Cohen*, 419 F.2d 1124 (8th Cir. 1969). . . . . . . . . . . . . . . . . . . . 31

*United States v. Daniels,* 685 F.3d 1237 (11th Cir. 2012). . . . . . . . . . . . . . . . 26, 30

*United States v. Dieter*, 429 U.S. 6 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Gravatt*, 868 F.2d 585 (3rd Cir. 1989) . . . . . . . . . . . . . . . . . . . 31

*United States v. Griggs*, 240 F.3d 974 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . 47

*United States v. Harlan*, 696 F.2d 5 (1st Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Harris*, 707 F.2d 653 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Hung Thien Ly*, 2007 U.S. Dist. LEXIS 104504 (S.D. Ga. 2007)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Ibarra*, 502 U.S. 1 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Moss*, 34 F.4th 1176 (11th Cir. 2022) . . . . . . . . . . . . . . . . . . 26, 30

*United States v. Nelson*, 609 F. App'x 559 (11th Cir. 2015). . . . . . . . . . . . . . . . . 39

*United States v. Parker*, 439 F.3d 81 (2nd Cir. 2006). . . . . . . . . . . . . . . . . . . . 47, 48

*United States v. Raddatz*, 447 U.S. 667 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Rinchack*, 820 F.2d 1557 (11th Cir. 1987) . . . . . . . . . . . . . . . . . 39

*United States v. Rodriguez*, 833 F.2d 1536 (11th Cir. 1987) . . . . . . . . . . . . . . . . 47

*United States v. Savage*, 701 F.2d 867 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . . 29

*United States v. Shalhoub*, 855 F.3d 1255 (11th Cir. 2017) . . . . . . . . . . . . . 45, 49

*United States v. Silva*, 443 F.3d 795 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . 26, 30

*United States v. Turner*, 897 F.3d 1084 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . 27

*United States v. Vives*, 546 Fed. Appx. 902 (9th Cir. 2013) . . . . . . . . . . . . . . . . 34

**Statutes**

18 U.S.C. § 2252A(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2422(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. §2251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. §2252A(a)(5)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §3006A(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

18 U.S.C. §3006A(e)(1) . . . . . . . . . . . . . . . . . . . . 1, 2, 26, 30, 31, 33, 35, 42, 44, 47

18 U.S.C. §4246  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

18 U.S.C. §4248 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

18 U.S.C. §§ 2251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §§ 4241(a) and (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 45

Fed. R. Civ. P. 63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. Rule Crim. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Fed. Rules Civ. P. 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 24, 33-35

## Other Authorities

2018 Report of the Ad Hoc Committee to Review the Criminal Justice Act . . . 27,

28, 31-33, 44

Guide to Judiciary Policy, § 230.26.15 "Case-Budgeting Attorneys". . . . . . . . . 32

# Jurisdictional Statement

The district court had jurisdiction over this case because Defendant-Appellant, Steven Michael Marks is charged with violations of federal law under 18 U.S.C. §§ 2251(a), 2252A(a)(2) and 2252A(a)(5)(B) which is alleged to have occurred in the Middle District of Florida. Doc. 1.

The court of appeals has jurisdiction over this appeal because Mr. Marks timely filed a notice of appeal on September 24, 2021, within 14 days of the final decision of the district court on September 13, 2021, which is reviewable under 28 U.S.C. § 1291, as a "final decision" of the district court, because it conclusively determined Mr. Marks' claim for reimbursement under the Criminal Justice Act, 18 U.S.C. §3006A(e)(1), for necessary expert psychiatric services of Dr. Rosa Negrón-Muñoz, which is collateral to the underlying action and may never result in a judgment subject to appeal.

This Court determined that the "issue raised by the jurisdictional question is carried with the case," so "a final determination regarding jurisdiction will be made by the panel to whom this appeal is submitted after briefing on the merits." Doc. 313.

1

# Statement of the Issues

The district court found that Appellant was eligible for CJA reimbursement for an expert on the issue of competency. However, it refused to allow the funds to be used for the forensic psychiatrist chosen by the defense. It directed that such funds could only be used to retain the clinical psychologist for the defense as to whom the district court had made an adverse credibility finding on an earlier competency review in the same case. The district court refused to reconsider this decision. Nonetheless, the forensic psychiatrist chosen by the defense did complete her evaluation and she testified at the second competency hearing before the magistrate judge, the result of which is currently on review by the district court judge. Under these circumstances:

1.   Does the duty to authorize funds for experts under 18 USC § 3006A(e)(1) give a judge the authority to direct which expert the defense attorney must obtain?

2.   If the judicial officer has any authority to pick which expert the defense would be permitted to obtain under §30006A(e)(1), was it error to do so here (1) without an "appropriate inquiry in an *ex parte* proceeding," and (2) based on the considerations suggested here, and not the need for the services, and (3) where the court, which would again ultimately decide the issue to which the expert would testify, had already determined that it would not credit the witness?

3.   Was it error for the district court to refuse to reconsider its *ex parte* decision

on this question of the administration of the Criminal Justice Act (CJA) under the rubric of FRCivP 60(b)?

4.   When the refusal to authorize reimbursement for the defense psychiatrist will not affect the outcome of the case, because the witness will (and did) testify, and where there may never even be a conviction to appeal from, is there any time to file a notice of appeal of that order, in order to pursue reimbursement only, other than at the time of its entry?

# Statement of the Case

On November 8, 2017, a Grand Jury returned a five count Indictment against 19-year-old, autistic, Steven Marks, alleging child pornography violations under 18 U.S.C. §§ 2251(a), 2252A(a)(2), and 2252A(a)(5)(B). Doc. 1. The charges arose out of his communications over the internet with two minor girls who sent him self-produced photographs. On January 4, 2019, the parties filed a joint motion for a competency evaluation of Mr. Marks. Doc. 47. On April 18 and 19, 2019 a competency hearing was held before United States Magistrate Judge Leslie R. Hoffman. Docs. 68, 70. In a Report and Recommendation ("R&R") dated August 30, 2019, Magistrate Judge Hoffman recommended that the district court find Mr. Marks not competent to stand trial. Doc. 76. On December 2, 2019, Judge Byron summarily rejected the recommendation in a decision in which he made an adverse credibility finding as to one of the two defense experts, the clinical psychologist, Dr. Geller, whose testimony he had not heard. Doc. 95.

On April 9, 2021, on a deadline imposed by the government, Mr. Marks executed a plea agreement involving a single count of violating 18 U.S.C. § 2422(b). Doc. 183. Defense counsel moved again for a competency determination, Doc. 186, which was granted. Doc. 200. Defense counsel moved for funds under the Criminal Justice Act ("CJA"). 18 U.S.C. § 3006A(e)(1) to allow counsel to obtain the services

of Dr. Negrón-Muñoz, a Board-Certified Forensic Psychiatrist. Doc. 203.

Judge Byron agreed that expert services were necessary and that Mr. Marks qualified under the CJA. However, he would only allow those funds for the defense to hire the same clinical psychologist that he had previously determined unworthy of belief. Doc. 207. Judge Byron rebuffed three motions seeking reconsideration, Docs. 213, 236, 245, in three separate orders. Docs. 221, 238, 246. Within 14 days of these final orders refusing permission to again seek reconsideration, a timely notice of appeal was filed. Doc. 247. Because the defendant had been found eligible for CJA funds, and because the usual notice was not sent out by the district court clerk if an *in forma pauperis* application were needed, defense counsel had not paid any filing fee. For that reason the appeal was dismissed by this Court, without prejudice. Doc. 266. The magistrate judge denied a *forma pauperis* motion on the ground that the appeal had been dismissed. Doc. 270. A motion for *forma pauperis* relief was filed with this Court. Doc. 268. In the meantime the court solicited views on its jurisdiction to hear this appeal. Jurisdictional Question, March 22, 2022. Appellant and the government responded. Appellant Response, April 5, 2022, Government Response, April 4, 2022. This Court determined that the "issue raised by the jurisdictional question is carried with the case," so "a final determination regarding jurisdiction will be made by the panel to whom this appeal is submitted after briefing on the merits."

Doc. 313. This Court, however, denied *in forma pauperis* relief, Doc. 313, on grounds that the appeal was frivolous – without specifying any reason for believing this – but did reinstate the appeal on the payment of the filing fee by counsel.

# Statement of Facts

## A.    Background

On June 9, 2017, Steven Marks, a 19-year-old autistic student at a vocational school in Orlando, Florida, was interrogated by three officers from the Orlando Police Department in his school dorm. Several months later, on December 12, 2017, Mr. Marks was arraigned on a five count indictment. Doc. 10. The undersigned was retained approximately one month later due to his experience in representing young men with Autism Spectrum Disorder ("ASD").

Months of pretrial negotiations and meetings focusing on the impact that autism had on Steven's case followed. On June 14, 2018, the government responded to the defense's contention that autism significantly effected Mr. Marks' perception by moving for a hearing to determine his mental competency pursuant to 18 U.S.C. §§ 4241(a) and (c). Doc. 28. After this motion was filed, the Court met with both parties and agreed to delay the proceeding so that the parties could try and reach a resolution. No resolution was reached. So, on January 4, 2019, the parties filed a joint motion for a competency evaluation of Mr. Marks. Doc. 47. Following the competency evaluations, the magistrate judge conducted a two-day hearing on Steven's competency to stand trial. Docs. 68, 70.

Three professionals testified at the competency hearing: Dr. Otto, a licensed

clinical psychologist who is Board-Certified in clinical and forensic psychology; Dr. Lynda Geller, a licensed clinical psychologist who specializes in the diagnosis and treatment of autism; and Dr. Jeffrey Danziger, a Board-Certified forensic psychologist. Docs. 74-75; Docs. 57, 64, 72-73. After hearing all of the evidence, the magistrate judge recommended that the district court find Mr. Marks not competent to stand trial. The conclusion was based on the testimony of all three testifying experts, but relied predominantly on the testimony of Dr. Danziger, who opined that limitations resulting from Mr. Marks autism rendered him unable to assist counsel and understand the nature and consequences of his proceedings. Doc. 76. In reaching the decision to allocate more weight to Dr. Danziger's opinion, the magistrate judge discussed Dr. Geller's testimony and report:

> The testimony and reports of Dr. Geller, while generally informative, will not be given as much weight (other than as additional support for Dr. Danziger's opinion) for three reasons. First, Dr. Geller is not an expert in forensic psychology, and did not profess to have any credentials in that area. She provided no evidence concerning her experience in evaluating defendants and/or testifying in competency proceedings other than to state that she has "often been called upon to assist in legal cases . . . ." Doc. No. 75-3 at 184. Second, it is apparent to the undersigned that Dr. Geller has become invested in the future of Marks and in the outcome of this case. She is devoted to educating the public to the causes and effects of ASD, as well as to assisting persons who are afflicted with ASD in operating in the "normal world." Doc. 76.

8

Magistrate Judge Hoffman recommended that the Court commit Mr. Marks to the custody of the Attorney General for placement in a treatment facility. Doc. 76.

On December 2, 2019, without having himself heard any testimony, Judge Byron issued an order finding Mr. Marks competent to proceed. That determination was based on his opinion that Dr. Otto's testimony should be given the most weight. When it came to discussing Dr. Geller's report and testimony, not only did Judge Byron recite the quote above, he took it a step further and stated the Dr. Geller was "overly partisan" and made a specific adverse credibility finding, rejecting her testimony entirely, despite the magistrate judge never questioning the credibility of Dr. Geller. Doc. 95. The Defense filed a motion to reconsider this decision in part on the grounds that Judge Byron had made a novel, adverse credibility finding without having conducted an actual *de novo* hearing. Doc. 108. That motion was denied as "noncompliant" for exceeding the page limit, after denying a contemporaneous motion to exceed the page limit, and was struck from the record. Doc. 109. The motion to amend the motion to reconsider was also denied as "out of time" despite it being filed on the same day as the order striking the motion to reconsider. Docs. 110, 111.

After finding Mr. Marks competent, Judge Byron set a scheduling order giving a deadline of March 6, 2020,for Mr. Marks to notify the Court of his intent to rely on

9

the insanity defense, which in turn required Mr. Marks to identify an expert who was willing and able to testify to his sanity. Doc. 116. Marks moved to extend this deadline because the prior expert evaluations only evaluated competency to proceed, not the insanity defense. Doc. 117. Judge Byron denied that request. Doc. 118. After denying Mr. Marks' continuance, the court left Mr. Marks with an impossible choice: (1) notify the court of the intent to raise the insanity defense without having an evaluation for that specific purpose; or (2) lose a potentially case altering defense. Mr. Marks disclosed psychologist Dr. Lynda Geller, the only expert who was able to offer a coherent opinion as to Steven's sanity at the time. Doc. 130. Simultaneously, the Defense began to search for a more suitable expert on the topic of the defendant's sanity. Mr. Marks' council searched for a forensic psychiatrist with special experience and expertise in the area of developmental disabilities and found Dr. Rosa E. Negrón-Muñoz, who was engaged in September, 2020.

In October, 2020, Dr. Geller injured her head, rendering her unavailable. Doc. 147. Judge Byron held a status conference and directed the parties to provide periodic status reports on Dr. Geller's condition. Doc. 150. Judge Byron strongly encouraged Mr. Marks to have a "back-up" for Dr. Geller. When Mr. Marks brought up his indigent financial status, Judge Byron invited Mr. Marks to apply for Criminal Justice Act (CJA) compensation under § 3006A(e)(1). The defense began preparing Dr.

Negrón-Muñoz on the question of criminal responsibility in the event that Dr. Geller would be unable to testify.

After receiving two reports on Dr. Geller's condition, the court held a status conference with both parties on January 8, 2021, and canceled the February trial setting. Doc. 161. Judge Byron set the new trial date for May 3, 2021. Doc. 163. Then the Government renewed a previous plea offer giving Mr. Marks the option of accepting a plea to one count of 18 U.S.C. § 2422(b) or one count of 18 U.S.C. § 2251(a). On April 9th, 2021, Mr. Marks accepted this plea despite his counsel believing Mr. Marks was not competent to enter into it. Doc. 183.

At the colloquy, Mr. Marks made a motion for a competency hearing to determine his competency to enter into the plea. Doc. 186. Mr. Marks argued that the previous competency ruling rested unilaterally on the adoption of Dr. Otto's opinion over that of Drs. Geller and Danziger, without any analysis of Mr. Mark's executive functioning, and his ability to rationally utilize whatever rote knowledge he might have access to. Mr. Marks' counsel explained in his motion for a competency hearing:

> I decided that it was in Steven's best interest to accept the plea offer despite the fact that on the same day Steven had failed to demonstrate the necessary competence to proceed. [...] While at this point, I believed Steven was not competent, if Steven did not choose to accept the plea before April 9, the next day, he would lose that choice.

11

Doc. 186.

## B.    Motion for CJA Funds

On April 30, 2021, the court granted the request for a second competency hearing. Doc. 200. On that same day, Mr. Marks made a second motion, *ex parte* , requesting financing under the CJA for necessary psychiatric services to evaluate Mr. Marks' competency. Doc. 203. Mr. Marks argued the situation had changed because the Government's new forensic psychologist, Dr. Montalbano, had agreed with the prefatory point that Steven suffered from a severe mental defect, ASD, but had disagreed that said ASD diagnosis impacted the legal charges he was facing. The motion explained that Dr. Negrón-Muñoz is a Board-Certified Forensic Psychiatrist, with an emphasis in her practice on individuals with intellectual and developmental disabilities. In other words, she was not just qualified to address the impact of ASD; she was also a board-certified forensic psychiatrist. So, she could address the forensic issues raised by the government's expert, taking into consideration that Dr. Montalbano had rendered a report which now needed to be addressed. Doc. 203.

The motion went on to explain that Dr. Negrón-Muñoz was already in a position to step in and fill this role expeditiously and at a more reasonable cost than previous experts. The motion also stated that Dr. Negrón-Muñoz had already interviewed Mr. Marks twice, and had reviewed many if not all of the recorded video

conferences in which defense counsel sought to help Mr. Marks attain competence, so she would not be starting anew. Mr. Marks also emphasized that his CJA application seeks only to pay Dr. Negrón-Muñoz for her services and expenses beginning April 8, 2021, the date Mr. Marks executed the plea agreement. Mr. Marks necessarily asked Dr. Negrón-Muñoz to turn her attention to the imminent issue of competence. Doc. 203. Finally, Mr. Marks argued in his motion that, under these facts, he was entitled to CJA funds for a forensic expert of his choosing as part of his fundamental Right to Present a Defense. Docs. 95, 203.

## 1.    Denial of Request for CJA Funds

Judge Byron denied Mr. Marks' motion for CJA funds. Doc. 207. He agreed that the financial circumstances were such that Mr. Marks was eligible financially for relief under the CJA and that he is entitled to an expert and that these services were necessary. However, he refused to authorize funds for the proposed forensic psychiatrist, Dr. Negrón-Muñoz. He was only willing to authorize expert funds for Dr. Geller, the expert he had previously discredited:

> The Court agrees the Defendant is entitled to an expert witness of his own for this second competency evaluation. He is free to privately retain Dr. Negrón-Muñoz; however, the Court will not authorize CJA funds simply because the Defendant prefers to now use Dr. Negrón-Muñoz over Dr. Geller. Accordingly, the Court will authorize CJA funds to pay Dr. Geller for her continued work on the issue of the

13

Defendant's competency and as the Defendant's disclosed expert witness on the insanity defense and invites the defense to file a voucher when her work is completed. Doc. 207.

In Judge Byron's denial, without any acknowledgment of previous statements that Dr. Geller was "partisan" and not credible, he reasoned that Dr. Geller had already substantially engaged with Mr. Marks and evaluated his competency. Judge Byron stated in his Order:

> The Defendant has failed to demonstrate that Dr. Geller's work as an expert witness on the issue of competency was flawed. To the contrary, the defense offered Dr. Geller as their key witness as to the Defendant's lack of competency. The fact that the Defendant now wants to use Dr. Negrón-Muñoz, his sixth expert witness, to offer opinions on the issue of competency does not warrant the expenditure of CJA funds. The Court is not convinced by the Defendant's argument that it is cost effective to retain Dr. Negrón-Muñoz simply because she may have been privy to pre-plea discussions between defense counsel and the Defendant. On the other side of the scale, the Court must consider that Dr. Geller invested enormous time in her compilation and review of records, her interviews with the Defendant, and her testimony at the first competency hearing, including the preparation of a detailed report. Doc. 207.

## C.    Motion for Reconsideration

In Mr. Marks' motion for reconsideration, Mr. Marks explains that Dr. Geller was discredited by Judge Byron for not being a forensic psychologist. Docs. 76, 95, 213. Thus, it became necessary to have a forensic psychologist for the upcoming

competency proceedings, and that it would be more economical to hire Dr. Negrón-Muñoz because of the contact she had with Mr. Marks before his plea agreement while Dr. Geller was recovering from her head injury. Doc. 213. Applying Federal Rule of Civil Procedure 60(b), Judge Byron denied Mr. Marks motion for reconsideration because Mr. Marks did not present any new evidence, conclusively stating, "in reality the motion is an attempt to raise arguments that could have been presented previously." Doc. 221. This failed to acknowledge the true purpose of the motion; the need to correct clear error or manifest injustice, a completely viable reason under Federal Rule of Civil Procedure 60(b), in an attempt to avoid the substance of the motion.

## D.    Second Motion for Reconsideration

In Mr. Marks' second motion for reconsideration, Mr. Marks argued that Judge Byron's Order denying reconsideration rests almost entirely on a procedural issue of perceived limits on a judge reconsidering a prior ruling. Doc. 236. Mr. Marks argued the Order does not consider the appropriateness of FRCivP 60(b) for reconsideration of an *ex parte* application by an indigent defendant for expert funds under the CJA. Doc. 236. Mr. Marks stated:

> Congress, by expressly directing that the §3006A(e)(1) determination must be made "after appropriate inquiry in an ex parte proceeding," recognized that this was not to be

15

a litigated question involving evidentiary burdens or presumptions, or adversarial proceedings resulting in "final orders." The frequent reference in §3006A to the "interest of justice" in the administration of the CJA contemplates a flexible system of achieving the goal of equal protection. Doc. 236.

Mr. Marks questioned the denial of his CJA application without any previous "inquiry" in camera and *ex parte*, and highlighted the prejudice he will face if he is relegated the exclusive services of Dr. Geller, a witness the district court is already determined not to believe. Docs. 76, 95, 236. Mr. Marks referenced the Report of the *Ad Hoc* Committee to Review the CJA's enunciated goal of protecting Defendants' rights to Equal Protection by entitling indigent Defendants to funds needed for services and experts. The report states courts should adopt a policy that a circuit case budgeting attorney be consulted on questions regarding funding indigent experts and that "judges should give due weight to their recommendations in [...] requests for expert services, and must articulate their reasons for departing from the case budgeting attorney's recommendations." Doc. 236.

## 1.    *Denial of Motion for Reconsideration*

In Judge Byron's final Order on this matter, he concluded:

> Since the Defendant has no right to seek reconsideration in the first instance; he has no right to seek reconsideration of an order denying an earlier motion for reconsideration. Doc. 238.

16

Judge Byron concluded that Mr. Marks should have included the arguments contained in his second motion for reconsideration in his original motion or first motion for reconsideration. Once again, Judge Byron applied FRCivP 60(b) and determined there are no new facts or intervening changes in the law allowing for motions for reconsideration and stating that Mr. Marks just wants to "retain yet another expert to support the Defendant's insanity defense." Doc. 238, p. 1. After denying Mr. Marks motion for reconsideration, Judge Byron prohibited him from filing further motions for reconsideration without leave of the court. *Id*.

## E.    Motion for Permission to File Third Motion for Reconsideration

Mr. Marks subsequently made a motion for permission to file a motion for reconsideration, clarifying that this motion had nothing to do with insanity, which appeared to be a point of confusion with the district court as it spent the majority of the order, Doc. 238, discussing the previous motions  when the insanity defense was at issue. Doc. 245. This motion was denied by Judge Byron on September 13, 2021, stating that "the defendant does not have an unfettered right to substitute Dr. Negrón-Muñoz for Dr. Geller." Doc. 246, p. 4.

Again faced with two impossible choices: (1) proceed without an expert; or (2) pay for the existing expert with money Mr. Marks did not have, the defense chose the

latter. Mr. Marks' decided to proceed with Dr. Negrón-Muñoz as his primary expert.

On August 30, 2021, the Court issued an order establishing a schedule regarding the competency proceedings, which required the parties to disclose "expert reports." Doc. 241. Mr. Marks complied with that request. A status conference was held the day after these reports were due, and Mr. Marks indicated that he intended to call Dr. Geller as an additional witness. Doc. 251. The Government objected on the grounds that Mr. Marks had not filed a report of hers, Mr. Marks contended that he had never intended to file a report and Dr. Geller was going to testify regarding previous conclusions already included in the papers. Docs. 256, 258. The court held that Dr. Geller, the expert the court was willing to allocate funds to, was barred from testifying at the second hearing. Doc. 267.

Dr. Negrón-Muñoz was the only psychological expert to testify on Mr. Marks' behalf at his second competency hearing that proceeded as scheduled in December of 2021. Docs. 288, 289, 209, et al.

## F.    Appeal

On September 27, 2021, Mr. Marks filed a Notice of Appeal. Doc. 247. Mr. Marks appealed from the (1) Order denying Defendant's Second Motion for an Order Authorizing Compensation under the CJA, Doc. 207; (2) Order denying Defendant's First Motion to Reconsider, Doc. 221; (3) Order denying Defendant's Second Motion

to Reconsider, Doc. 238; and (4) Order denying Defendant's Motion for Permission to File Third Motion for Reconsideration. Doc. 246.

# Summary of Argument

The district court determined that Steven Marks is indigent and eligible for reimbursement for expert services under the CJA, 18 USC §3006(e). Thus, there is no issue about his eligibility for reimbursement for expert services "necessary for adequate representation."

Nor is there a question about the need for a qualified expert to assist the defense in addressing the question of competence. The district court agreed that it was appropriate to "authorize counsel to obtain the services" of a psychologist or psychiatrist.

18 USC §3006A(e) implements the Equal Protection rights of federal defendants[1] by directing district courts to make funds available for expert services for indigent defendants. This applies irrespective of whether they have appointed or retained counsel. However, §3006A does not empower a district court to take over the function of defense counsel in any respect, including deciding who to obtain as an expert.

Among the issues to be addressed by the CJA Review Committee appointed by

---

[1]The Equal Protection Clause of the Fourteenth Amendment applies to the federal government through the Due Process Clause located in the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497 (1954), *Adarand Constructors, Inc. v. Peña* 515 U.S. 200 (1995)

Chief Justice John G. Roberts, Jr. in 2015 was that of "Judicial involvement in the appointment, compensation, and management of panel attorneys and investigators, experts, and other service providers." Recommendations by the that committee seeking insulation of at least the compensation of experts from judicial control were adopted by the by the Judicial Conference, in Guide to Judiciary Policy, § 230.26.15, but in that whole process it was not suggested that judges felt empowered to themselves determine who the experts should be. Therefore, it was error for the district court in this case to condition approval of funds to reimburse for expert services on an expert of defense counsel's choosing.

Moreover, assuming, *arguendo*, that a district court has the power to override defense counsel's choice of experts for some compelling reason, there were no such compelling reasons here. To the contrary, here there were compelling reasons for defense counsel to obtain the services of Dr . Rosa Negrón-Muñoz. There were also compelling reasons for defense counsel not to rely exclusively on the report and testimony of psychologist Lynda Geller.

An experienced defense counsel in a serious case would seek a board certified forensic psychologist or psychiatrist to address the issue of competence. Dr. Negrón-Muñoz is a Board-Certified Forensic Psychiatrist, with unusual emphasis in her practice on individuals with intellectual and developmental disabilities. She had

already interviewed Mr. Marks twice, focusing on issues related to competency. She had reviewed many, if not all, of the recorded video conferences in which defense counsel sought to help Mr. Marks attain competence, enable him to assist in his defense, and make the critical decisions that were his to make. Because of her qualifications, she was in a position to assist in critiquing the assumptions and methodology of Dr. Jenkins of the Bureau of Prisons. She was an ideal choice to prepare a report and testify regarding the issue of competence.

On the other hand, Dr. Geller, while eminently qualified to speak to Mr. Marks' autism and its effects on his capabilities relevant to competency, is not a forensic psychologist. She had not reviewed the recorded video conferences and did not have her files on the case since she spent the summer in Massachusetts and her files were in Florida. She also had a difficult year after a traumatic brain injury in a fall which might have impaired her recall of 30 hours of video conferences by the time a hearing occurred. Thus, defense counsel had even more  reason to be unwilling to rely exclusively on Dr. Geller alone than in the first competency hearing where it was thought necessary to have a forensic psychiatrist in addition.

However, other concerns conclusively demonstrate that it was not appropriate to limit the use of CJA funds to the obtaining of Dr. Geller alone.

A competency hearing had previously been held before a magistrate judge who

22

recommended that Mr. Marks be found incompetent, after hearing Dr. Geller and

Board Certified Forensic Psychiatrist Dr. Jeffrey Danziger for the defense and Board

Certified Dr. Randy Otto for the government. She mentioned that she gave less

weight to Dr. Geller on the issue of competency because Dr. Geller was not a

*forensic* psychologist. The district court rejected her recommendation, in part by

making its own *adverse credibility* finding as to Dr. Geller in order to disregard the

evidence entirely, without ever hearing her testimony.[2]

Thus, the district court's conditioning its approval of funds for experts here was

more than merely substituting its own judgement for that of defense counsel on who

should be the defense expert. The district court sought to relegate the defense to

hiring of a particular expert that no reasonable defense attorney would have relied on

as their sole expert on the issue of competency, because the magistrate judge was

concerned she was not a *forensic* psychologist, and the district court judge himself

---

[2]To make judgments about credibility without hearing the witness raises a question
of fairness. See. Fed. R. Civ. P. 63. The Advisory Committee note to the 1991
amendment cautions that the "court would . . . risk error to determine the credibility
of a witness not seen or heard who is available to be recalled." Id. (citing *Anderson
v. City of Bessemer*, 470 U.S. 564 (1985)) But in the context of review of
determinations by Magistrate Judges, a novel adverse credibility finding raises
constitutional concerns. *United States v. Raddatz*, 447 U.S. 667,  at 681 n. 7 (1980)
Judges "must always be sensitive to the problems of making credibility
determinations on the cold record." *Raddatz*, 447 U.S. at 679. It is generally the case
that "[t]he one who decides must hear," and must, for herself, assess credibility. Id.
at 677 (quoting *Morgan v. United States*, 298 U.S. 468, 481 (1936))

had already declared her to be unworthy of belief. Since the same judges would again decide the question of competency, the effect of the ruling was to tip the scales all but conclusively against Appellant on the question of competence.

A succession of requests for reconsideration bringing the objective unfairness of this ruling to its attention, were rebuffed by the district court, under the rubric of FRCivP 60(b). This was error, contravening the mandate in §3006A(e)(1) for an "appropriate inquiry in an *ex parte* proceeding" for determining the defense request, and rulings administering the CJA not being the kind of litigated orders and judgments that are the subject of the often overstated limits of FRCivP 60(b). None of the reasons offered by the district court for its ruling had merit, nor did they address the obvious prejudice of forcing on the accused a witness it had already determined not to credit.

Mitigating the damage from this ruling, and doing what was necessary in the proper representation of Mr. Marks, defense counsel nevertheless proceeded with Dr. Negrón-Muñoz, who prepared a report addressing the issue of his incompetence and demonstrating the methodological inadequacy of the evaluation by the Bureau of Prisons psychologist, and who testified for the defense at the second competency hearing before the same magistrate judge. Thus, the issue is not one of the deprivation of a necessary expert witness, which might be an issue on an appeal from a

24

conviction. Rather, the issue is only the entitlement of the Appellant to reimbursement for the reasonable and necessary fees for a necessary expert witness under the CJA.

This court has jurisdiction to hear this appeal at this time because the ruling on disallowing funds for Dr. Negrón-Muñoz was absolutely final, collateral, and could only clearly be challenged with a contemporaneous notice of appeal; there may never be a judgment of conviction to appeal, and Dr. Negron-Muñoz having testified, the ruling would not have contributed to the conviction so as to be part of an appeal by the defendant from a conviction. Appellant might be found incompetent and any effort then to appeal would be way out of time. He could also be found, after an indeterminate period of time, to have attained competency, but to delay for so long the possibility of reimbursement to which he is entitled is just as good as denying it entirely, and the same question of funding of experts would then again arise.

# Point I
# The judicial duty under §3006A, to "authorize counsel to obtain the services" of experts, is not authority to control whose services counsel obtains

## A.    Standard of Review

Whether 18 U.S.C. §3006A(e)(1) authorizes a judge to control which psychological expert would be obtained with CJA funds is one of interpretation of a statute, which is a question of law to be decided *de novo*. *United States v. Moss*, 34 F.4th 1176 (11th Cir. 2022); *United States v. Daniels,* 685 F.3d 1237 (11th Cir. 2012); *United States v. Silva*, 443 F.3d 795 (11th Cir. 2006). In this case, additionally the lower court did not consider whether it had such authority, and so there is no exercise of discretion to be reviewed.

## B.    §3006A(e)(1) does not expressly or impliedly suggest any authority to control what expert the defense obtains with CJA funds.

18 U.S.C. § 3006A(e)(1) states, in part:

> Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . *shall* authorize *counsel* to obtain the services.

Here, the court found both that the services – a psychological competency evaluation, report and testimony – were necessary and that Mr. Marks was financially unable to obtain them.  There is no qualification put on the further requirement that the court "*shall* authorize *counsel* to obtain the service."  There is no suggestion in this language that the court has the authority to direct which expert ought to be "obtained."  But here the court stated a preference for Dr. Geller to be the defense expert and refused to authorize counsel to obtain the services sought from Dr. Negrón-Muñoz for just that reason. The term "the services" has been understood to mean "the requested expert."  *E.g. United States v. Turner*, 897 F.3d 1084, 1106–07 (9th Cir. 2018).

The 2018 Report of the Ad Hoc Committee to Review the Criminal Justice Act was extremely concerned about the independence of the defense function and the problem of judicial interference with the hiring of experts. Mostly this was because of the denial of funding altogether. However, the Committee report quoted Chief Judge Raner Collins, D. Arizona: "I think a system that the judge who presides over the case, determines what experts have been hired, how much someone is paid — I think that's a system filled with problems." (p. 89). The report concluded section saying, in part:

These complaints all point to a concern that the CJA

distorts the adversarial process by requiring judges to decide what work panel attorneys can do and what experts they can hire. This problem is structural. (p. 92).

In adopting some of the recommendations of the "Cardone Committee Report," and stepping toward independence of defense counsel, in March of 2019, the U.S. Judicial Conference adopted the policy of involving a case budgeting attorney to whom "reviewing judges should give due weight" as to requests for expert services, and "must articulate their reasons for departing from the case budgeting attorney's recommendations." Doc. 236, p. 3.

Defense counsel proposed to the district court that a case budgeting attorney be involved as part of its required "appropriate inquiry," but to no avail. Doc. 236, p. 3.

This is not a case where the judge believes that the accused is not entitled to CJA funds.  This is not a case where the judge believes that expert services are not necessary. Thus, this is not a case which fails to meet the preconditions requiring the judge ("shall") to authorize counsel to obtain services. Here, in refusing to allow funds for admittedly necessary for services from Dr. Dr. Negrón-Muñoz, but only from the psychologist of the judge's choosing, the district court created a condition that Congress did not, and went beyond its authority under the statute and erred as a matter of law.

# Point II

# Even if a judge has some authority to control what experts an indigents' counsel obtains, it was error to do so here

Having already determined that the services sought were necessary, and that Mr. Marks was eligible for reimbursement for them, it is not clear what might actually justify a judge taking control of whose services the defense obtains, if that authority even exists. But this case does not present that question because the reasons given were mistaken or impertinent, primarily because the judge did not conduct the "appropriate inquiry" contemplated by Congress. Beyond this is the transparent prejudice of withholding CJA funds from an expert witness who the indigent defendant needs, and with whom he has a chance to succeed, and tendering funds only for the witness with whom the judge has already determined the defense would fail.

## A.    Standard of Review

A judge does not have discretion to violate constitutional rights. Whether Mr. Marks' Equal Protection rights, as codified in the Criminal Justice Act, were violated by the order is a question of law to be reviewed *de novo*. *United States v. Castaneda*, 997 F.3d 1318, 1325 (11th Cir. 2021); *United States v. Savage*, 701 F.2d 867, 868 n.1

(11th Cir. 1983) (whether there was a violation of defendant's due process rights "is a question of law").  The interpretation of a statute, here whether the district court complied with the procedure set forth in 18 U.S.C. §3006A(e)(1), for an "appropriate inquiry in an *ex parte* proceeding," is also a question of law. *United States v. Moss*, 34 F.4th 1176 (11th Cir. 2022); *United States v. Daniels*, 685 F.3d 1237 (11th Cir. 2012); *United States v. Silva*, 443 F.3d 795 (11th Cir. 2006). The numerous mistakes of fact evident in the decisions in support of the order, and the failure of the district court to engage in the "appropriate inquiry," reflects the lack of the kind of exercise of discretion in any findings of fact that might justify deferential review of such findings.

## B.  An "appropriate inquiry" was never conducted under the Criminal Justice Act as required by § 3006(A)(e)(1)

§3006A(e)(1) contemplates an "appropriate inquiry in an *ex parte* proceeding," allowing an indigent accused to establish the reasonableness and necessity for expert services. It is clear that the point of that proceeding is to allow the defense to provide additional information to the judge in support of the relief and respond to the judge's concerns, if any. See, e.g. *State v. Dahl*, 874 N.W.2d 348, 353 (Iowa 2016). ("At that [*ex parte*] hearing, the court should require the defendant to provide additional information that will allow it to rule on the merits.") "The defendant's burden,

30

however, does not relieve the Court of its duty to make an appropriate inquiry . . ." *United States v. Hung Thien Ly*, 2007 U.S. Dist. LEXIS 104504, at \*2 (S.D. Ga. 2007) (citing, *United States v. Gravatt*, 868 F.2d 585, 588 (3rd Cir. 1989); *United States v. Bauer*, 956 F.2d 693, 694 (7th Cir. 1992). The "appropriate inquiry" requirement reflects the understanding that each of the constitutional rights protected by §3006A, to paraphrase, "invokes, of itself, the protection of a trial court" for "the accused—whose life or liberty is at stake." *Alamia v. Jones*, 2016 U.S. Dist. LEXIS 129216, at \*43 (N.D. Fla. Feb. 3, 2016) (citing, *United States v. Harris*, 707 F.2d 653, 662 (2d Cir. 1983); *United States v. Harlan*, 696 F.2d 5, 6 (1st Cir. 1982); *United States v. Cohen*, 419 F.2d 1124, 1127 (8th Cir. 1969).

The dynamic intent of this provision was recognized by the U.S. Judicial Conference, by adopting the policy recommended by the Cardone Committee Report - that a circuit case budgeting attorney be consulted on questions such as this.[3] In

---

[3]The "Cardone Report" is the common reference for the "Report of the Ad Hoc Committee to Review the Criminal Justice Act Program," in 2018, by the CJA Review Committee appointed by Chief Justice John G. Roberts, Jr. in 2015. The CJA Review Committee was chaired by Judge Kathleen Cardone (W.D. Tex.). Following two and a half years of study, including nearly 100 hours of testimony from 229 witnesses at seven public hearings. The final report was delivered to Director James C. Duff, Administrative Office of the U.S. Courts on November 2, 2017. The full report, with the 2018 revisions is here: https://www.uscourts.gov/sites/default/files/2017_report_of_the_ad_hoc_committee_to_review_the_criminal_justice_act-revised_2811.9.17.29_0.pdf

discussing the use of a budgeting attorney, that report stated, "judges should give due weight to their recommendations in . . . requests for expert services, and must articulate their reasons for departing from the case budgeting attorney's recommendations."[4]

Here, by contrast, upon receiving the request for CJA funds the judge denied the request summarily. The judge did not conduct any "inquiry" or give the defense the opportunity to be heard at any "proceeding" at which, or as a consequence of which, the defense could seek to cure the supposed faults of the request, dispel the judge's misunderstandings, or point out facts overlooked by the judge. The order was treated like a determination in favor of a party on a fully litigated dispositive motion. This hardly comports with the role assigned to judges in the administration of the CJA as the conduit for sympathetically enabling an indigent defendant – even one whose family has retained counsel for him – to have the expert services that are needed in the defense. Our suggestion that a case budgeting attorney be consulted

_____

[4]Guide to Judiciary Policy, § 230.26.15 "Case-Budgeting Attorneys"
(a) Every circuit should have available at least one case-budgeting attorney.
(b) Reviewing judges should give due weight to the case-budgeting attorney's recommendations in reviewing vouchers and requests for expert services, and must articulate their reasons for departing from those recommendations." See, "Cardone Recommendation Study: Recommendation Adoptions by Judicial Conference" at https://www.fjc.gov/content/348390/recommendation-adoptions-judicial-conference

before denying the funds for expert services was ignored. Doc. 236, p. 3.

The Cardone Committee report noted that "[t]he judiciary as a whole and individual federal judges were never well suited to the role Congress gave them" and "[g]enuine independence is crucial to providing a high-quality defense . . . Under the current administrative structure too many attorneys are compromised—if not hamstrung—by the lack of financial resources . . . and latitude to mount a skilled and vigorous defense of their clients in federal court. (p. 10, 11). Here, the letter and spirit of the CJA were violated by the absence of any "appropriate inquiry in an *ex parte* proceeding" at which any concerns of the judge could be answered, the judge's mistaken impressions could be corrected, and the impact of his decision thoroughly aired.

## C.  It was error to refuse to reconsider a determination under §3006A

The denial of reconsideration, Doc. 221, of the order rests entirely on limits on reconsidering a prior ruling thought to be contained in FRCivP 60(b). This decision faults the defense for not addressing these limits, and accuses the defense of trying to circumvent these limits in seeking this "extraordinary remedy." The court went so far as to twice cite an unpublished 9th Circuit panel decision affirming a denial of reconsideration "[b]ecause no statute or Federal Rule of Criminal Procedure

authorizes the filing of a motion for reconsideration."[5] Doc. 221, p.2; Doc. 238, p. 2.

There is, in fact, no limit on the trial judge's discretion to correct errors. Doc. 236, p. 10-11. The Supreme Court has repeatedly endorsed such motions as a "traditional and virtually unquestioned practice." *United States v. Dieter*, 429 U.S. 6 (1991) , at 8 n.3, and has observed that a motion for reconsideration extends the time for filing an appeal. *United States v. Ibarra*, 502 U.S. 1, 6-7 (1991).

FRCivP 60(b) also permits reconsideration for "(6) any other reason that justifies relief." The decision itself acknowledges cases acknowledging that reconsideration is appropriate in the case of "clear error or manifest injustice." Here, the motion had pointed out what need not have been stated at all: "our only witnesses on that issue" at the present time, Dr. Geller, "had already been discredited" by the judge." Doc. 203, ¶22. The objective prejudicial effect of only allowing funds for a witness the magistrate found less persuasive because of a lack of forensic experience, and whom the judge himself had found not worthy of belief, is too obviously a "reason that justifies relief," "clear error," and a "manifest injustice." But this was completely ignored by the court in the refusal to reconsider – at any point.

Of course, many trial judges resort to the same rubric relied on the by judge

---

[5] *United States v. Vives*, 546 Fed. Appx. 902, 905 (9th Cir. 2013). The weakness of the reasoning of this decision was explained at Doc. 236, p.11.

here to avoid reconsidering a decision. However, when it comes to administering the CJA, the complaint that "reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment," Doc. 207, p. 2, is anathema to the "appropriate inquiry in an *ex parte* proceeding" designed to ensure that indigent federal defendants must be given the opportunity to be fully heard and address concerns of the judge. See, Doc. 236, p. 9. Because of the chasm of difference between the interests protected by Rule 60(b) on litigated matters and the Equal Protection rights at stake under the CJA, it was error to summarily persist in refusing to reconsider the adverse determination under 3006(A).

## D.    A forensic psychologist or psychiatrist is generally necessary for a defense expert on competency

Every experienced criminal lawyer, and every experienced federal judge understands the need for a forensic psychiatrist or psychologist to testify on behalf of the accused. At the first competency hearing the defense called both a psychologist and forensic psychiatrist. The magistrate judge made a point of noting that Dr. Geller was not a forensic psychologist, and both she and the district court judge failed to appreciate that Dr. Geller was not chosen as the primary defense witness on

competency.[6]

The order appealed from, and the decisions refusing to reconsider that order, unreasonably fail to recognize the need for a forensic clinician and treat Dr. Geller and Dr. Negrón-Muñoz as fungible, without any reason to believe that Dr. Geller was even available to testify for the defense. As further evidence of the prejudice of this decision, the judge could have allowed funds for Dr. Danziger, who is board certified, and who was also familiar with the case like Dr. Geller. So, the point of the decision was to only allow CJA funds for one who was not a forensic clinician, and whose evidence had already been discounted for that reason.

## E.    Dr. Negrón-Muñoz was especially well qualified for evaluating Mr. Marks' competency

The judge below could not suggest that Dr. Negrón-Muñoz was not thoroughly qualified on the medical legal issue of competency, or the need to have an expert to consult on challenging the government's psychologist. She was more qualified than most autism experts and was also more qualified than Dr. Danziger, the previous defense board certified psychiatrist, at least in the area of expertise regarding the developmentally disabled. In fact, the district court did not even attempt to address

---

[6]The district court repeatedly asserted that Dr. Geller was the defense's "key witness" primary witness on the issue of competency, Doc. 207 p. 6, which she was not, as we explained in the original motion for reconsideration. Doc. 213, p. 5.

the question of the necessity for a forensic psychiatrist of Dr. Negrón-Muñoz's qualifications except in relation to the court's wholly irrelevant earlier choice to refuse authorization for CJA funds to hire Dr. Negrón-Muñoz to conduct an insanity evaluation.[7] Doc. 179.

Rather than objectively evaluating the necessity of Dr. Negrón-Muñoz, the district court resorted to mischaracterizing Dr. Geller as the "key witness as to the Defendant's lack of competency." Doc. 207, p. 6. Dr. Geller was not the "key witness," her work was always viewed in tandem with forensic experts. Doc. 213, p. 5. It would not matter if this was so, because this says nothing about the several tactical and practical reasons why the defense could never reasonably go forward with sole reliance on Dr. Geller at this stage. Though Dr. Geller's evidence was critical on the defendant's autism related deficits bearing on his cognitive and functional capabilities needed for competence, on that medical-legal issue our critical witness was Dr. Danziger, who the judge did not give the defense the option to obtain with

_____

[7]As noted we obtained Dr, Negrón-Muñoz for an insanity evaluation after the government's board certified psychologist, Dr. Montalbano, concluded that, although Steven Marks' autism was a severe mental disorder; It did not, in his opinion, render him unable to appreciate the wrongfulness of his conduct. We had informed the judge that Dr. Geller was not suited to this task, and sought unsuccessfully to delay filing a Rule 12(b)(1) noted until we had an evaluation. Doc. 117. The praise for Dr. Geller, in that context rings very hollow in light of the judge's adverse credibility finding as to Dr. Geller, without hearing her or giving her (or the defense otherwise) an opportunity to address the judge's assumption.

CJA funds.

## F.    Poor reasons advanced to justify the decision

In its initial order, and in the decisions refusing to reconsider its decision, the district court advanced several rationales which are completely irrelevant, have no legal basis, and obfuscated the most obvious problem with its decision.

### 1.    *It was not necessary for the defense to show that Dr. Geller's testimony was "flawed"*

In the order denying Mr. Marks' request for funds for Dr. Negrón-Muñoz, the Court states:

> The Defendant has failed to demonstrate that Dr. Geller's work as an expert witness on the issue of competency was flawed. Doc. 207, p. 6.

This argument conflates the question of the need for an additional evaluation at government expense, which the district court had already resolved without hesitation in the defendant's favor, with the question of imposing the judge's choice of which expert the defense counsel must obtain if CJA funds are to be authorized.

The district court had already determined that Steven Marks was entitled to obtain expert services at this juncture with CJA funds. The only question was, who? Cases the judge cites involving refusal to appoint an expert where it was thought that

existing reports were sufficient, like *United States v. Rinchack*, 820 F.2d 1557 (11th Cir. 1987), or where the stated need for the expert was "implausible,"*United States v. Nelson*, 609 F. App'x 559, 565 (11ᵗʰ Cir. 2015) are not pertinent. And in the case of *Rinchack*, the prior reports covered the same issue as the issue sought to be explored by a new expert. Here, Dr. Geller had not been appointed by the court, and the issue now was more specific: was Steven capable of making a rational decision to enter into plea agreement?

However, the district court's reliance on *Rinchack* and *Nelson* is not just irrelevant, it is also incorrect. In *Nelson*, this court discussed *Rinchack* noting that this court had denied a request for an additional evaluation because there was no demonstration that the existing evaluations were "flawed." *Nelson*, 609 F. App'x at 572 However, in *Rinchack*, 820 F.2d at 1564, when this court discussed the absence of any flaw in the report, it specifically noted that the expert was not "incompetent or otherwise unworthy of belief." *Id.* Here, the district court has already found that Dr. Geller is "overly partisan" and not worthy of belief, exactly the opposite of the situation previously contemplated by this court.

## 2. *It was not necessary for the defense to prove that it was more economical to hire Dr. Geller*

The decision denying the original request for funds stated:

> The Court is not convinced by the Defendant's argument that it is cost effective to retain Dr. Negrón-Muñoz simply because she may have been privy to pre-plea discussions between defense counsel and the Defendant. On the other side of the scale, the Court must consider that Dr. Geller invested enormous time in her compilation and review of records, her interviews with the Defendant, and her testimony at the first competency hearing, including the preparation of a detailed report. Doc. 207, p. 6.

The defense raised the issue of economy not because it is probative on determination of necessity. Rather the defense, like Chief Judge Roberts' Ad Hoc Committee, is well aware of the tendency of judges toward parsimony when giving funds to the defense. But, because there was no "appropriate inquiry" the decision has it quite mistaken and had not even considered all the information it had been provided. The decision made assumptions for which there was no basis, such that it would be "easy" for Dr. Geller to do the work that would have been required of Dr. Negrón-Muñoz. Doc. 207, p. 5-6. An "appropriate inquiry" would have disclosed that this is simply not the case. Indeed, the motion for reconsideration refuted this assumption:

> I have spoken to Dr. Geller about this and she is still recovering from her brain injury. She is still not able to

40

work for the same length of time in a day that she used to be able to do. She is working on deadlines for a few other cases to prepare an original report. She is specifically wary of the task of reviewing such extensive materials and having to go to school, in essence, on forensic psychology, the specific legal rules and processes that are involved in this case, and the law relating to competence. She does not feel prepared to counter anything that might be testified to by a forensic psychologist, except as to Steven's autism, his specific deficits, and their severity. Doc. 236.

Dr. Negrón-Muñoz would not be "billing" for the work she had already done, but which Dr. Geller would have to replicate, and because of her training and experience, she would be more capable efficient at report writing aimed at legal concepts, and more able to evaluate the methodology of the Bureau of Prisons psychologist. But that was not an issue, or certainly primary issue, on which any decision under §3006A(e)(1) should turn. Even if it were true that it would be "more economical" for Dr. Geller, in the absence of any indication that the costs for Dr. Negrón-Muñoz would be unreasonable, this is no reason not to allow the defense to obtain her services or some other forensic Psychiatrist, such as Dr. Danziger. Doc. 236. But, without having any information about the current status of either Dr. Geller or Dr. Danziger, the judge only considered allowing funds for Dr. Geller.

This it seems the point was to both deprive the defendant of a qualified forensic clinician and limit the defense choice to Dr. Geller.

We understand how the district court could miss or forget some of the points

41

raised by the defense in its motion for CJA relief and the several motions seeking reconsideration.  But here the district court's confusion is about many important and even irrelevant matters like (1) the number of experts that the defendant's family had paid for (contributing to their inability to be able to afford the expense of another psychiatrist);[8] (2) who the doctors were that the defense had used;[9] (3) the number of hours of recorded video conferences Dr. Negrón-Muñoz had reviewed and Dr. Geller had not;[10] (4) treating a clinical psychologist expert in autism as fungible with a forensic psychiatrist on the medicolegal issue of competency;[11] (5) problems with Dr.Geller's availability and possible memory issues;[12] (6) the actual requirements of §3006A(e)(1) for "appropriate inquiry;"[13] (7) the expert witness was needed for a competency hearing, not a proceeding before the jury.[14]

All this should have been addressed in an "appropriate inquiry" – at the outset or on reconsideration.

---

[8]Doc. 207, p. 6

[9]Doc. 207, p. 1, fn. 1

[10]Doc. 213 ¶¶6-7

[11]Doc. 213 ¶¶ 8-11

[12]Doc. 213, ¶¶ 18-19

[13]Doc. 238, p. 7-8

[14]Doc. 238, p. 9

### G. Limiting the defense to obtaining the services of an expert who the district court had already found incredible was unjustifiable and prejudicial

The overarching error in the decision below, and the refusals to reconsider the decision, is the obvious, objective, and unjustifiable prejudice of directing that CJA funds may not be used for an expert witness who the indigent defendant needs, and with whom he has a chance to succeed, but only for one with whom he is bound to fail, because the judge has already determined, fairly or unfairly, that she is unworthy of belief.

The motion to reconsider made the representation that, under these circumstances, no capable criminal defense attorney would proceed with Dr. Geller alone if their client could afford to retain Dr. Negrón-Muñoz. Doc. 207, p. 5. There can be no doubt about what federal defenders across the country would say, if polled, on whether, under these circumstances, they would proceed with Dr. Geller alone. This all but determines the Equal Protection right of the accused to the appointment of a forensic psychologist or psychiatrist in this scenario, in addition to Dr. Geller. The motion for reconsideration made this argument clearly. Doc. 236, p. 18-21.

Under these circumstances, no defense counsel could have anticipated that the district court would even have considered relegating the use of CJA funds to only Dr. Geller. It was simply imponderable. It remains imponderable. Whether intended or not,

43

this is an obvious and outcome-determinative tipping of the scales of justice. This was in no way an offer of the "protection of a trial court" for the constitutional rights implemented by the CJA referenced in *Alamia v. Jones*, *supra*, and intended by Congress.

Nor can it be squared with the letter and spirit of §3006A to brush aside objections to this unjustifiable tipping of the scales, using the role of the court as a conduit of funds for the defense, to counter that the defendant "is free to privately retain" the one he prefers. Doc. 207, p. 7. Nothing could be more discordant with the entire premise of the CJA, which Chief Judge Roberts (who appointed the *Ad Hoc* Committee to review the CJA) recognized is still in need of greater realization. Here, the judge had found that Steven "is entitled to an expert witness of his own," and funds for that because he is not able to privately obtain the expert. It mocks an indigent defendant's right to Equal Protection to say that he is "free" to pay for that Equal Protection if the judge withholds it. Doc. 236, p. 19-21.

# Point III
# The appeal is from a final order on a collateral issue which is appealable now

This Court asked the parties to address the issue of jurisdiction. Jurisdictional Question, filed March 22, 2022. Submissions were made. Memorandum Regarding Appealability of Final Order Denying Funds for Necessary Expert Services, filed April 5, 2022.  The Court then determined that the jurisdictional question would be carried with the case. Doc. 313. Here we reiterate our view that the order appealed from is a "final order" under 28 U.S.C. § 1291. The order conclusively determines an important issue of the administration of the Criminal Justice Act and the rights sought to be protected therein, it is completely collateral to the merits of the action, which may never result in a judgment from which an appeal would lie.  *Cohen v Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949); *United States v. Shalhoub*, 855 F.3d 1255, 1260 (11th Cir. 2017).

## A.    The decision refusing fees for Dr. Negrón-Muñoz is final

Judge Byron's order conclusively determined that CJA funds were not going to be authorized for the services of Dr. Negrón-Muñoz. Doc. 207. Any doubt as to its finality is obviated by his successive denial of two motions for reconsideration, Docs. 221, 238, and a motion seeking permission to file a third. Doc. 246.

45

## B.    The decision resolved an issue completely separate from the merits of the action

This case only involves reimbursement under the CJA, not the validity of a conviction. The defendant has not been prejudiced in relation to the criminal action because Dr. Negrón-Muñoz was not prevented from testifying by the decision. Had she not testified as a result of such an order, the issue would be about affected trial rights, such as the right to present a defense, Due Process/Equal Protection, and prejudice. But such a case would not be about reimbursement, because the proposed witness was not engaged.

If Mr. Marks were convicted, either because he is found competent and enters a plea in accordance with the filed plea agreement, or perhaps after changing his mind and proceeding to trial, then there will be a judgment; but that judgement would not have arisen because of the failure to authorize CJA funds because Dr. Negrón-Muñoz' evidence will have been considered. In other words, there is no conceivable judgment whose appeal would legitimately raise the question of deprivation of reimbursement under the CJA for a witness who has fully and satisfactorily presented her evidence. Memorandum Regarding Appealability of Final Order Denying Funds for Necessary Expert Services, filed April 5, 2022.

## C.    The issue is a constitutional one which must be appealable

This case is not comparable to one where the issue is the reasonableness of the amount of compensation for an attorney, *e.g,United States v. Rodriguez*, 833 F.2d 1536, 1537-38 (11th Cir. 1987), *United States v. Griggs*, 240 F.3d 974 (11th Cir. 2001), or expert witness, *e.g.. United States v. Bloomer*, 150 F.3d 146, 148 (2d Cir. 1998). Where the determination is to refuse funds for the attorney altogether, and the defendant is not deprived of the representation, which is closer to our case, the order is appealable as a collateral matter. *United States v. Parker*, 439 F.3d 81, 90 n. 9 (2nd Cir. 2006) (finding the denial of "mid-case" appointment under § 3006A(c) constituted a "final decision" under the collateral order doctrine, appealable separate from the appeal of he criminal conviction).

Of course the accused has a right to counsel, not a right to have counsel paid or paid adequately.  But an individual who, with the help of family is able to retain counsel but still found  "indigent," does have the right, under §3006A(e)(1) and the Equal Protection aspect of the Fifth Amendment, to funds for the expert necessary to his defense. If denied this, and he somehow manages to obtain the services of the witness nevertheless, his right translates to one of reimbursement. But that "right" can then only be effectuated on an appeal. While this represents a narrow category of

47

cases, most likely cases of "mid-case" appointment under §3006A(c), or like this one, where the lawyer just continues without seeking "mid case" appointment, the Equal Protection issue, and the issue of fair administration of the Criminal Justice Act are just as important.

Rulings erroneously depriving funds for experts must be of course reviewable if they result in an unjust conviction. However, where defense counsel or the client's financially exhausted family are able to retain an expert in order to avoid an unjust conviction — rather than gamble on succeeding on an appeal and bearing the anxiety, waste and expense of starting over — the same issue is at stake.

Like any important issue, the law cannot develop reasonably without judicial review. Moreover, with no hope of fair judicial review of an unfair denial of expert services, this narrow category of clients may find it too difficult to manage to obtain the assistance of experts, and be relegated to hoping for a reversal on appeal of a conviction after a competency proceeding trial without the expert.

When such fundamental rights, and the fair administration of the Criminal Justice Act are at stake, even for such a small category of defendants and cases, this Court should also "follow the rationale of several earlier cases by 'resolving the doubt in favor of appealability'." *United States v. Parker, supra*, at 90 n.9 (2d Cir. 2006).

48

## D.    If not appealable now, the order might not be appealable at all

An important concern reflected in the cases is to preserve issues by allowing immediate appeals on collateral issues where this might be the only opportunity to appeal. *United States v. Shalhoub*, 855 F.3d 1255, 1260 (11th Cir. 2017). Such is our case. If Steven Marks is found not competent and unable to attain competence, and immediately or ultimately found ineligible for confinement under 18 USC §4246 or §4248, he will be discharged and there will be no judgment at the time to appeal from. So, it would be also, if he were ultimately acquitted.

Likewise, if Mr. Marks is now found to be competent in the pending determination, or at some later time found to have attained competence, and a conviction results, then the issue of whether the defense was entitled to CJA funds for Dr. Negrón-Muñoz would not be an issue that would call the judgment into question. It is purely collateral. And an effort to appeal this order then would surely be met with the objection that a notice of appeal had to be filed within 14 days of the order, as Appellant has done.

So it is not enough to raise concerns about whether this is a final order. A challenge to the jurisdiction or timing of this appeal must also definitively establish that this order could be appealed under every possible outcome without having filed

49

the present appeal, noticed within 14 days of the order. If not upon the present notice of appeal, *when else might* Mr. Marks seek reimbursement for expert services which, upon a proper application of the rule, would have to be paid? Our demonstration above of the collateral nature of the relief sought at the same time demonstrates the fact that no possible outcomes provide an opportunity to get relief: dismissal on account of lack of enduring lack of competence, acquittal at trial, or a conviction upon the present plea agreement which requires an appeal waiver.

This Court has, and must exercise, jurisdiction to correct this error in the adminstration of the Criminal Justice Act.

# Conclusion

For all of the foregoing reasons, this Court should overturn the district court's previous order refusing to allocate funds for Dr. Negrón-Muñoz and authorize the reimbursement of Dr. Negrón-Muñoz for all of her work regarding the issue of Mr. Marks' mental competency.

Dated: August 22, 2022
Todd Foster, Esq.
Florida Bar No.: 0325198
BARNETT, BOLT, KIRKWOOD,
LONG, KOCHE & FOSTER, P.A.
601 Bayshore Blvd. Suite 700
Tampa, FL 33606
Telephone: (813) 253-2020

/s/ Mark J. Mahoney
Mark J. Mahoney, *pro hac vice*
HARRINGTON & MAHONEY
70 Niagara Street, 3rd Floor
Buffalo, New York  14202
(716) 853-3700

**Certificate of Compliance**

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 11,122 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface (14-point Times New Roman font) using Wordperfect 2021.

/s/ Mark J. Mahoney
_____
Mark J. Mahoney

**Certificate of Service**

This is to certify that I have electronically served the foregoing APPELLANT'S OPENING BRIEF upon all parties herein via CM/ECF on this 22nd day of August, 2022, addressed as follows:

LINDA JULIN MCNAMARA
Assistant United States Attorney
Deputy Chief, Appellate Division
Florida Bar No. 714887
400 N. Tampa St., Ste. 3200
Tampa, FL 33602

Todd Foster, Esq.
BARNETT, BOLT, KIRKWOOD,
LONG, KOCHE & FOSTER, P.A.
601 Bayshore Blvd. Suite 700
Tampa, FL 33606

/s/ Mark J. Mahoney
Mark J. Mahoney